THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CHRISTOPHER FRANKS, Also Known as CHRISTOPHER FRANK, Appellant.—Judgment unanimously reversed on the law and motion granted. Memorandum: On October 31, 1983, defendant was indicted for conspiracy in the fourth degree and criminal sale and possession of a controlled substance in the third degree. The charges arose from the sale of LSD to an undercover officer at the apartment of defendant's girlfriend in July of 1983. He was ultimately arraigned on these charges on March 31, 1986, 29 months after filing of the indictment. Defendant's pretrial motion to dismiss the indictment on speedy trial grounds was denied, and he was subsequently convicted of criminal sale in the third degree. On appeal, defendant contends that the trial court erred by denying his motion brought on speedy trial grounds (CPL 30.30 [1] [a]).

The People contend that the entire period from October 31, 1983 to March 31, 1986 should be excluded from the computation of any period of delay because the defendant fled to avoid prosecution and because due diligence was exercised to locate him (CPL 30.30 [4]). We conclude that the People failed to sustain their burden of proof *(see, People v Santos,* 68 NY2d 859) on either issue, and that the trial court erred by denying defendant's timely motion to dismiss the indictment.

The People's claim that defendant fled to avoid prosecution is based upon the undercover officer's testimony that, at the time of the sale, defendant thought he knew who the officer was, together with defendant's former girlfriend's testimony that defendant realized that the buyer was an officer and "split". That evidence is not persuasive. The record reveals that defendant did not flee to avoid prosecution when he left the girlfriend's apartment in July. He remained in the area to stand trial on Federal bank robbery charges, which culminated in an acquittal in late August. He continued to live in the area until the first week in October when he returned to California to attend his sister's wedding. He then continued to reside at his sister's apartment in Santa Monica, California, where he had resided before coming to New York for the Federal trial.

With respect to due diligence, the evidence reveals that when questioned at the time of her arrest, the former girlfriend told police that defendant might be in California, and that in the fall of 1983, police also questioned some informants, who indicated that he might be in California or West Virginia. No further effort was undertaken to locate defendant until December 1984, well beyond the six-month statutory period. During those 11 months, the police or prosecutor's office did not interview postal authorities (cf., People v Manley, 63 AD2d 988), and never made inquiry at the address indicated on defendant's arrest card. They did not interview defendant's mother or father, and did not check with any local or State agencies, such as the Departments of Motor Vehicles or Social Services (cf., People v Walters, 127 AD2d 870, lv denied 69 NY2d 956). Despite information from at least two sources that defendant might be in California, no inquires were made with any agencies or law enforcement officials in that State. In sum, the minimal efforts exercised in the fall of 1983 and complete lack of any activity for 11 months of 1984 fail to constitute due diligence in attempting to locate defendant (see, People v Orse, 118 AD2d 816; People v Schiavo, 118 Misc 2d 776), and this period of delay cannot be excluded simply because due diligence might have been exercised after December 1984 (see, People v Roy, 102 AD2d 876). (Appeal from judgment of Niagara County Court, Hanningan, J.— criminal sale of controlled substance, third degree.) Present— Dillon, P. J., Callahan, Green, Pine and Balio, JJ.